# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 1043 | **DATE** | 11/23/2004 |
| **CASE TITLE** | Dick Corporation vs. SNC-Lavalin Constructors, et al | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Defendants motions to dismiss (5-1), 34-1, 36-1, are granted in part and denied in part. Defendant's motion for summary judgment (8-1) is denied. Defendant's motion for a more definite statement (34-2 & 36-2) is denied. Plaintiff's motion for leave to file surreply (43-1) is granted and consider it in our analysis of defendants' motions.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | | |
| | No notices required. | | | | | |
| ✓ | Notices mailed by judge's staff. | | | NOV 2 4 2004 | | 48 |
| | Notified counsel by telephone. | | | date docketed | | |
| | Docketing to mail notices. | | | | | |
| | Mail AO 450 form. | | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | 11/23/2004 | | |
| | | | | date mailed notice | | |
| GL | courtroom deputy's initials | | | GL | | |
| | | | | mailing deputy initials | | |
| | | Date/time received in central Clerk's Office | | | | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DICK CORPORATION,                          )
a Pennsylvania corporation                  )
                                            )
            Plaintiff,                      )
                                            )
      v.                                    )      No. 04 C 1043
                                            )
SNC-LAVALIN CONSTRUCTORS, INC.,            )
a Delaware corporation, and                 )
PCL INDUSTRIAL CONSTRUCTION,               )
INC., a Colorado corporation                )
                                            )
            Defendants.                      )

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff Dick Corporation ("Dick") filed a five-count amended complaint[1] on April 15, 2004,

alleging a federal copyright claim and state common law claims for tortious interference with

prospective business relations, tortious interference with contractual relations, unjust enrichment, and

conversion, against defendants SNC-Lavalin Constructors, Inc. ("SLCI") and PCL Industrial

Construction, Inc. ("PCL"). PCL moved to dismiss the all claims against it. SLCI moved for summary

judgment on Dick's copyright claim against it and moved to dismiss Dick's state common law claims.

Dick then filed a second amended complaint, which amended some of the state law claims, withdrew

its unjust enrichment claim, and added a new state law claim for misappropriation of trade secrets.

Defendants SLCI and PCL moved to dismiss the re-pled state law claims, or, in the alternative, for a

more definite statement. For the reasons stated below, we grant in part and deny in part the motions to

_____

[1] Plaintiff's original complaint was filed on February 10, 2004 and first amended before
Defendants filed any dispositive motions.

dismiss. We deny the motion for summary judgment, and we deny the motions for a more definite statement.[2]

## I.      Copyright Claim

Defendant PCL moves to dismiss Dick's copyright infringement claim (Count I) against it under Federal Rule of Civil Procedure 12(b)(6). Defendant SLCI has moved for summary judgment on Dick's copyright infringement claim against it under Federal Rule of Civil Procedure 56(b). For the reasons stated below, we deny both motions.

### A.      PCL's Motion to Dismiss

#### 1.      Standard of Review

In ruling on a motion to dismiss under Rule 12(b)(6), we view the complaint in the light most favorable to plaintiff, accepting all well-pleaded allegations as true and drawing all reasonable inferences in favor of the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). The court will dismiss a complaint for failure to state a claim only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). However, a plaintiff may plead itself out of court if a plaintiff pleads particulars that show it has no claims. *Thomas v. Farley*, 31 F.3d 557, 558-59 (7th Cir. 1994).

Normally, in deciding a motion to dismiss, the court may not consider matters outside the pleadings, like affidavits and other materials. *See* Fed. R. Civ. P. 12(b). However, documents that a defendant attaches to a motion to dismiss may be considered if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310

---

[2]As is our discretion, we grant Dick's motion for leave to file a surreply brief and consider it in our analysis of Defendants' motions.

F.3d 969, 971 (7th Cir. 2002). In this case, Defendant PCL has attached a copy of the Joint Venture Agreement ("JVA") to its motion to dismiss. The court will consider the JVA, along with the pleadings, in deciding the motion to dismiss because the JVA is central to Dick's copyright claim and is referred to in its complaint.[3]

## 2. Background[4]

On or about May 12, 1999, National Energy Production Corporation ("NEPCO"), which has since filed for Chapter 11 bankruptcy, and Dick entered into a Joint Venture Agreement ("JVA") to construct the Kendall County Generation Facility, a power plant to be located in Minooka, Illinois. (Sec. Am. Cmplt. ¶¶ 2, 9.) The JVA provided, at paragraph 25, that "all documents produced for or by the Joint Venture shall be owned by the Joint Venture . . . . [N]either party shall use the documents for other projects without the prior written consent of the others." Id. ¶ 14.

As part of the Joint Venture, Dick and NEPCO created certain engineering designs, drawings, design data, calculations, specifications, intellectual property, and other related documents ("Joint Venture Drawings") for the purpose of constructing the Kendall facility. Id. ¶ 15. As part of the Joint Venture, Dick also created certain scheduling information, cost projections, cost information, bidding information, and other financial reports ("Joint Venture Data") for the purpose of constructing the Kendall facility. Id. ¶ 16.

---

[3]While the court has additional evidence through Defendant SLCI's summary judgment motion, in ruling on PCL's motion to dismiss, we confine our inquiry to the submissions on PCL's motion. See, e.g., Frane v. Kijowski, 992 F. Supp. 985, 989 (N.D. Ill. 1998). We do not consider the documents other than the JVA that PCL has attached to its motion to dismiss, as they are not central to Dick's claim. Albany Bank & Trust Co., 310 F.3d at 971.

[4]Accepting the plaintiff's allegations as true, we set forth the following facts relevant to PCL's motion to dismiss Dick's copyright claim.

Dick and LSP-Kendall Energy, LLC entered into a contract to provide engineering, procurement and construction services for the construction of the Kendall facility. (Sec. Am. Cmplt. ¶ 11.) Under the Kendall contract, Dick granted LSP-Kendall "an irrevocable, royalty-free, nonexclusive licence under all patents and other intellectual property, and agrees to provide [LSP-Kendall] with all vendor drawings and data . . . to the extent necessary for the operation, maintenance, repair, or alteration (other than improvements affecting basic design) of the [Kendall] facility." *Id.* ¶ 12.

Even prior to NEPCO's bankruptcy filing in 2002, NEPCO abandoned the Joint Venture and Dick assumed management and operation of the Joint Venture. *Id.* ¶ 17. As a result of the default, Dick assumed all ownership interest in the Joint Venture assets, including its intellectual property. *Id.*

On December 21, 2000, NEPCO entered into a contract with LSP-Nelson for NEPCO to perform the engineering, procurement, and construction services for the Nelson Facility, a power plant to be located in Dixon, Illinois. (Sec. Am. Cmplt. ¶¶ 3, 19.) On February 28, 2002, NEPCO assigned its rights under the Nelson contract to Defendant PCL. In Spring of 2002, Defendant SLCI entered into an arrangement to perform construction-related services at the Nelson Facility. Defendants improperly and without Dick's consent used the Joint Venture Drawings and Joint Venture Data to construct the Nelson Facility. Dick has ownership rights in the Joint Venture Drawings and Joint Venture Data and has not granted any rights in the copyrighted Joint Venture Drawings to Defendants. *Id.* ¶¶ 25-27. Dick has obtained federal copyright registrations on the Joint Venture Drawings. *Id.* ¶ 29. Dick asserts a claim for copyright infringement based on Defendants' use of the Joint Venture Drawings.

### 3. Analysis

Defendant PCL moves to dismiss Dick's copyright infringement claim against it (Count I) for failure to state a claim. To establish a copyright infringement claim, a plaintiff must show (1) ownership of a valid copyright and (2) unauthorized copying by the defendant of the copyrighted work. *Feist*

*Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991); 17 U.S.C. § 501(a). PCL argues that Dick has not alleged that it is the exclusive owner of the copyrights in question. Specifically, PCL argues that Dick's basis for exclusive ownership of the copyrights in the Joint Venture Drawings is the transfer of those copyrights to the Joint Venture, which Dick allegedly assumed upon NEPCO's default. Because Dick's allegations do not support a valid transfer of the copyrights from NEPCO to the Joint Venture, PCL argues, NEPCO retained a copyright interest in the drawings at issue and could, therefore, lawfully license them to PCL. We hold that Dick has sufficiently alleged that NEPCO transferred its copyright interest to the Joint Venture and that Dick became the exclusive owner of the copyright interest when NEPCO defaulted on the JVA. Therefore, Dick has properly alleged a copyright violation, and dismissal under Rule 12(b)(6) is not appropriate.

The Copyright Act allows a copyright owner to transfer its copyrights "in whole or in part" to a third party. 17 U.S.C. § 201(d). Section 204(a) of the Copyright Act governs the transfer of copyright ownership and provides that a "transfer of copyright ownership . . . is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and is signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a); *Effects Assocs., Inc. v. Cohen,* 908 F.2d 555, 557 (9th Cir. 1990). Both Dick and PCL agree that there is an instrument in writing, the JVA. The parties disagree as to whether the JVA effects a valid transfer of NEPCO's copyright interest in the Joint Venture Drawings to the Joint Venture. At issue is the interpretation of paragraph 25 of the JVA between Dick and NEPCO, which states:

> All documents produced for or by the Joint Venture shall be owned by the Joint Venture. Upon termination of this Agreement, each party shall own an undivided interest in such documents in proportion to the entitlement of such party to the profits of the Joint Venture. These documents shall be stored at a location determined by the Executive Committee and neither party shall use these documents for other projects without the prior written consent of the other. Either party may make duplicate copies of such documents without consent of the other parties.

Whether the language in paragraph 25 of the JVA satisfies the requirements of Section 204(a) to effect a valid transfer of the copyright in the Joint Venture Drawings from NEPCO to the Joint Venture is a matter of pure contract interpretation. As contract interpretation is a matter of law, in deciding a motion to dismiss, we need only to construe this provision to determine whether Dick has sufficiently alleged that NEPCO transferred its copyright interest to the Joint Venture. *See Hufford v. Balk*, 497 N.E.2d 742, 744 (Ill. 1986). PCL argues that paragraph 25 is insufficient to transfer NEPCO's copyright because it is silent as to the transfer of ownership in the Joint Venture Drawings and as to NEPCO's ownership of the copyrights in the Joint Venture Drawings.

Under Section 204(a), a writing need not use the term "copyright" to effectuate a valid transfer. *See ITOFCA, Inc. v. Megatrans Logistics, Inc.*, 322 F.3d 928, 931 (7th Cir. 2003); *Schiller v. Schmidt, Inc.*, 969 F.2d 410, 413 (7th Cir. 1992). The writing may be sufficient to transfer a copyright if it uses terminology and language that clearly includes copyrights. *See, e.g., ITOFCA*, 322 F.3d at 931 (finding that a transfer of "all assets" included copyrights); *Schiller*, 969 F.2d at 414 ("Although the agreement does not mention the word 'copyright,' its wording leaves little doubt that Bertel sold all of the assets of Spotline Studios, tangible and intangible alike."); *see also John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.*, 186 F. Supp. 2d 1, 11 (D. Mass. 2002) (finding that writing specifying "Work, Drawings, and Specifications," when read with other provisions indicated a copyright transfer was intended). Whether a Section 204 copyright transfer has been effectuated is determined by interpreting the writing as a whole, and seeing if the writing suggests that the parties intended to transfer a copyright interest. *Schiller*, 969 F.2d at 413 (looking beyond the sale of photographic negatives to the sale agreement to intent, "to see what was sold"); *Liu v. Price Waterhouse*, 302 F.3d 749, 755 (7th Cir. 2002) (finding that it was proper for a jury to consider the parties' intent to determine whether a letter agreement transferred copyrights); *see also* 3 Nimmer on Copyright § 10.03[A][2] ("even though a

6

written instrument may lack the terms 'transfer' and 'copyright,' it still may suffice to evidence [the author's and the transferee's] mutual intent to transfer the copyright interest"). In construing a written agreement, the court must "consider every phrase and clause in light of all the others in the instrument, 'which must be considered as a workable and harmonious means for carrying out and effectuating the intent of the parties.'" *John G. Danielson*, 186 F. Supp. 2d at 11 (quoting *SAPC, Inc. v. Lotus Dev. Corp.*, 921 F.2d 360, 363 (1st Cir. 1990)).

At issue in the present case is whether "[a]ll documents" in paragraph 25 of the JVA refers only to physical documents or may be read to refer to all interests in the documents, including copyrights. PCL argues that "[a]ll documents" refers only to the physical documents, and not to any associated intellectual property rights. Dick argues that when read in light of the other sentences in paragraph 25, the sentence effectuated the intent of the parties to transfer the copyrights along with the physical documents to the Joint Venture. When we construe the JVA in light of all the sentences of paragraph 25, we find that it may have effectuated the intent of the parties to transfer copyright interests to the Joint Venture.

The broad language "all documents" used in the first sentence of paragraph 25 may be read to refer either to physical documents or to all interests in documents, including copyrights. This language is sufficiently broad that either interpretation is plausible. *See, e.g., Friedman v. Stacey Data Processing Servs., Inc.*, 17 U.S.P.Q.2d 1858, 1862 (N.D. Ill. 1990) ("What did the parties mean by 'property' – did they mean simple ownership rights to the programs themselves, or did they mean those rights plus the copyright? The language of the contract is sufficiently broad that either interpretation is plausible.") The language in the rest of paragraph 25 could also support an interpretation that copyrights were transferred to the Joint Venture. The second sentence of the paragraph indicates that each party shall own an "undivided interest" in the documents upon termination of the Agreement, and the third sentence

states, "[N]either party shall use these documents for other projects without the prior written consent of the other." This language restricting the right to reproduce or use the property in question could refer to copyright interests. Furthermore, the language in the last sentence of the paragraph, which authorizes either party to make duplicate copies of the documents without the consent of the other, is suggestive of a copyright interest, as the right to duplicate is an enumerated right exclusive to a copyright holder. 17 U.S.C. § 106(1).

Thus, we find that when considering the language of paragraph 25 as a whole, Dick has alleged a credible interpretation of this clause that may reflect the parties' intent to transfer the copyright interest in the Joint Venture Drawings to the Joint Venture. As such, Dick may be able to prove a set of facts that will entitle it to relief on its copyright violation claim,[5] and, therefore, Dick has sufficiently alleged a cause of action for copyright violation. *See, e.g., Friedman*, 17 U.S.P.Q.2d at 1862 (N.D. Ill. 1990) (holding that where the language of a contract was sufficiently broad to support an interpretation that a transfer of copyrights was intended, motion to dismiss for failure to state a claim is denied). We do not hold that the JVA actually did transfer the copyright interest in the Joint Venture Drawings; we simply hold that Section 204's writing requirement does not bar the plaintiff's copyright infringement claim at this stage. Defendant PCL's motion to dismiss is denied.[6]

---

[5]For example, Dick may be able to introduce extrinsic evidence of the parties' intent regarding the transfer of copyright. *See Schiller*, 969 F.2d at 413 (court relied in part upon party's testimony that he believed he was purchasing copyrights in finding that a transfer occurred); *Liu*, 302 F.3d at 755 (jury could properly consider the parties' intent in determining whether a transfer of copyright occurred); *Friedman v. Stacey Data Processing Servs., Inc.*, 17 U.S.P.Q.2d at 1862 (extrinsic evidence can be introduced to support a claim of copyright transfer).

[6]Having found that Dick has sufficiently alleged a copyright violation based upon a Section 204(a) transfer, it is unnecessary to address Dick's second argument against dismissal based upon NEPCO having contracted away its rights to convey copyright interests in the JVA.

**B.     SLCI's Motion for Summary Judgment**

SLCI moves for summary judgment on Dick's copyright infringement claim against it (Count I). For the reasons stated below, we deny summary judgment on Dick's copyright claim.

### 1.     Standard of Review

Summary judgment is proper only when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This standard places the initial burden on the moving party to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (citations omitted). Once the moving party has met this burden of production, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true and draw all inferences in that party's favor. *See Anderson*, 477 U.S. at 255.

### 2.     Facts[7]

On May 12, 1999, NEPCO and Dick executed the JVA to build the Kendall County Generational Facility. NEPCO, at the very least, co-authored some of the drawings at issue in this lawsuit with Dick related to the construction of the Kendall facility. The JVA included the language in paragraph 25, which has been cited above. *See* Section I.A.3. The JVA also provided that, "If either party . . . shall default in any of its obligations under this Agreement including . . . fail to make available the benefit of

---

[7]The following facts are culled from Dick and SLCI's Local Rule 56.1 Statements of Material Facts and attached exhibits.

its experience, technical knowledge and skill or fail to contribute its share of working capital . . . , then the other party may give written notice to the Defaulting Party specifying the event of default. In the event that the Defaulting Party does not cure its default within 7 days after receipt of such notice then the Non-Defaulting Party may terminate the Defaulting Party's interest in the Joint Venture."

On February 4, 2002, the Joint Venture Project Manager made a request to NEPCO for capital contribution in the amount of $1,500,605. NEPCO did not make the capital contribution. On April 24, 2002, the Joint Venture Project Manager made a request for capital contribution in the amount of $6,413,363. NEPCO did not make the capital contribution.

On May 14, 2002, NEPCO and Defendant SLCI entered into an Asset Purchase Agreement and Services Agreement. The Asset Purchase Agreement included a provision, which gave SLCI "[a]ll right, title and interest of the Seller in . . . assets and properties . . . used in connection with the design, development, construction . . . of power generating plants and facilities, including the following: . . . all Intellectual Property . . . ." The Asset Purchase Agreement's definition of "Intellectual Property" included "service marks and copyrights." Section 2(e) of the Services Agreement stated, "NEPCO shall license the Intellectual Property (as defined in the License Agreement) to [SLCI], pursuant to a License Agreement in the form attached hereto as Exhibit C." Under the License Agreement, the intellectual property was to be conveyed from NEPCO to SLCI, "if and to the extent owned by NEPCO." Section 4 of the License Agreement stated "All intellectual property licensed to [SLCI] (and its affiliates) hereunder are licensed "as is," "where is," and "with all faults."

On May 20, 2002, NEPCO filed for bankruptcy. The bankruptcy court approved the Asset Purchase Agreement between NEPCO and SLCI on September 5, 2002, and the transaction was completed on September 17, 2002. The Sale Order contained the following language: "[SLCI takes NEPCO's assets] free and clear of all mortgages, security interests, conditional sale or other title

retention agreements, pledges, liens, judgments, demands, encumbrances, easements, restrictions or charges of any kind or nature, if any, including, but not limited to . . . all debts arising in any way in connection with any acts of NEPCO."

### 3. Analysis

SLCI asserts that it is entitled to summary judgment on Dick's copyright claim because: 1) the JVA did not transfer NEPCO's copyrights to the Joint Venture as a matter of law and fact; and 2) even if the Joint Venture owned the copyrights at issue, SLCI purchased NEPCO's share of the Joint Venture's copyrights from the bankruptcy court free of any use restrictions.

SLCI argues that the JVA is insufficient as a matter of law to transfer a copyright interest, a similar argument to that presented by PCL in its motion to dismiss. Having found that the language of the JVA may evidence an intent by the parties to transfer copyright interests, we reject SLCI's argument that the JVA did not transfer NEPCO's copyrights to the Joint Venture as a matter of law. Dick has presented evidence through affidavits that the parties intended to transfer their copyright interests through the JVA. *See, e.g.,* Ambroso Aff. ¶¶ 5, 6; Muerken Aff. ¶¶ 7, 9. SLCI has presented opposing evidence that the parties maintained their copyright interests. *See, e.g.,* Ex. D to SLCI's Mem., Kendall EPC Agreement ¶ 3.13. Thus, a genuine issue of material fact exists as to whether a copyright transfer occurred.

SLCI asserts that even if Dick could prove that the JVA transferred NEPCO's copyrights to the Joint Venture, Dick has not alleged facts to support its claim to have assumed all Joint Venture assets before NEPCO filed for bankruptcy. Therefore, SLCI argues, SLCI bought NEPCO's share of the Joint Venture assets from the bankruptcy estate unencumbered through the bankruptcy court's Sale Order approving the Asset Purchase Agreement. In its complaint, Dick alleges that "Even prior to NEPCO's bankruptcy filing in 2002, NEPCO abandoned the Joint Venture, and Dick assumed management and

operation of the Joint Venture. As a result of the default, Dick assumed all ownership interest in the Joint Venture assets, including its intellectual property." Dick supports its allegation with the fact that in February and April of 2002 Dick asked for capital contributions, and NEPCO did not supply them. The JVA, however, requires that a party in default be given notice of the default and the opportunity to cure within seven days before its interest is terminated. Dick did not give notice and an opportunity to cure, and, therefore, NEPCO's interest in the Joint Venture did not terminate by its failure to make capital contributions. NEPCO retained its interest in the Joint Venture assets when it filed for bankruptcy.

The next issue, then, is whether NEPCO's interest in the Joint Venture assets passed to its bankruptcy estate. If so, bankruptcy law would have prohibited Dick from sweeping in and assuming the Joint Venture's assets, and SLCI then properly purchased NEPCO's interest in the Joint Venture Drawings through the bankruptcy sale. 11 U.S.C. § 362(a). If not, SLCI did not purchase NEPCO's interest in the Joint Venture assets and may be liable for copyright infringement on the Joint Venture Drawings.

Dick argues that under bankruptcy law, assets of a joint venture are not part of the bankruptcy estate of one of the joint venturers, and, therefore, SLCI did not purchase an interest in the Joint Venture Drawings through the bankruptcy sale. In support of its position, Dick states that, in Illinois, a joint venture is governed by partnership principles, and it is well-established that assets of a partnership are not part of the bankruptcy estate of one of the partners. *See Federal Deposit Ins. Co. v. Braemoor Assoc.*, 686 F.2d 550, 556 (7th Cir. 1982) (noting that under Illinois law, "a joint venture of individuals is subject to the Uniform Partnership Act."); *In re Funneman*, 155 B.R. 197, 200 (Bankr. S.D. Ill. 1993) ("It is well-settled that assets owned by a partnership are not included in the bankruptcy estate of an individual partner."). SLCI argues that the Joint Venture should not be treated as a partnership, but

rather as an unincorporated association, which holds property through the individuals who comprise it rather than in its associate name. *See Chicago Grain Trimmers Ass'n v. Murphy*, 58 N.E.2d 906, 909 (Ill. 1945). In support, SLCI points out that paragraph 30 of the JVA is entitled "No Partnership" and states that "Nothing in this Agreement or in the relationship of the parties respecting the Joint Venture or the Work is intended to create nor shall it be construed to create or confirm a partnership between them."

In accordance with Illinois partnership law and bankruptcy law, the Joint Venture assets should be treated as partnership assets and not considered part of NEPCO's bankruptcy estate. It is clear that, reading the JVA as a whole, paragraph 30 was intended only to recognize that NEPCO and Dick did not intend to create a general partnership with a continuing relationship for future endeavors, but rather only a partnership for the purpose of building the Kendall facility. A "joint venture" relates to a single specific enterprise or transaction, while a "partnership" relates to a general business of a particular kind. *See Nussbaum v. Kennedy*, 642 N.E.2d 151, 155 (Ill. App. Ct. 1994). The Joint Venture is, therefore, to be governed by partnership principles and treated as a partnership for the purposes of applying bankruptcy law. *See Lutheran Gen. Hosp., Inc. v. Printing Indus. of Illinois/Indiana Employee Benefit Trust*, 24 F. Supp. 2d 846, 851 (N.D. Ill. 1998) ("Partnership principles govern joint ventures and the rights and liabilities of the members of a joint venture are tested by the same legal principles which govern partnerships."). Under bankruptcy law, the Joint Venture assets, including the Joint Venture Drawings, did not pass into NEPCO's bankruptcy estate, and SLCI did not purchase them. *See In re Funneman*, 155 B.R. at 200; *see also* In re Olszewski, 124 B.R. 743, 746 ( Bankr. S.D. Ohio 1991); *In re Minton Group*, 46 B.R. 222, 226 (Bankr. S.D.N.Y. 1985). As such, there exists a genuine issue of material fact about whether SLCI's use of the Joint Venture Drawings constitutes copyright infringement. SLCI's motion for summary judgment is denied.

## II.    State Law Claims

### A.    Misappropriation of Trade Secrets

Defendants move to dismiss Dick's misappropriation of trade secrets claim (Count V), arguing several different grounds for dismissal. These arguments are without merit.

SLCI first moves to dismiss Dick's misappropriation of trade secrets claim against it, with prejudice, on the basis that the alleged trade secrets in the "Joint Venture Data" lost their confidentiality protection when the JVA terminated. Specifically, SLCI argues that Dick must allege a confidentiality obligation to state a claim for misappropriation of trade secrets, and, in this case, the only basis for such an obligation is the JVA. When the JVA terminated upon NEPCO's bankruptcy filing or default, so too did NEPCO's obligation to keep the Joint Venture Data confidential, says SLCI. Therefore, no confidentiality obligation existed, and no misappropriation occurred when SLCI used the Joint Venture Data. However, even if we were to accept the premise that the confidentiality obligation terminated when the JVA did,[8] Dick's complaint supports the allegations that NEPCO breached its confidentiality obligation before the JVA terminated and that Defendants misappropriated and used the Joint Venture Data before the JVA terminated. Thus, we deny SLCI's motion to dismiss the misappropriation of trade secrets claim on this ground.

PCL first moves to dismiss Dick's misappropriation of trade secrets claim on the basis that Dick has judicially admitted that the documents at issue are not trade secrets. In *NEPCO/Dick v. LSP-Nelson Energy, LLC., et al.*, in response to a motion to dismiss, Dick stated, "There is no doubt, as Defendants are well aware, that the Joint Venture Drawings are not secrets. There was never an effort to keep them 'secret' or 'confidential.'" Plaintiff's Response to Defendant's Motion to Dismiss at 5, *NEPCO/Dick et al. v. LSP-Nelson, LLC., et al.*, 2003 WL 21557383 (N.D. Ill. Jul. 8, 2003) (No. 02-50355). However,

---

[8]At this point, we do not opine on this issue.

14

the Joint Venture Data at issue in the misappropriation claim is alleged to be distinct from the Joint Venture Drawings at issue in the prior case and in other counts of the present complaint. (*See* Sec. Am. Cmplt. ¶¶ 15-16.) Therefore, at this pleading stage, there is no judicial admission which precludes this claim.

Next, SLCI and PCL both move to dismiss Dick's misappropriation of trade secrets claim as insufficiently pled. To state a claim for misappropriation of a trade secret under the Illinois Trade Secrets Act (ITSA), 765 ILCS 1065/1, the complaint must allege that information was (1) a trade secret, (2) misappropriated, and (3) used in the defendant's business. *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265-66 (7th Cir. 1992). A trade secret is defined as information that "is sufficiently secret to derive economic value . . . from not being generally known to other persons who can obtain economic value from its disclosure or use and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." 765 ILCS 1065/2(d)(1)(2). Under the ITSA, "misappropriation" is defined as the "acquisition of a trade secret of a person by another person who knows or has reason to know that the trade secret was acquired by *improper means*," which includes the "breach or inducement of a breach of a confidential relationship or other duty to maintain secrecy or limit use." Defendants argue that the plaintiff has failed to (1) identify the trade secret; (2) allege what reasonable efforts were made to maintain secrecy; (3) plead that a confidentiality obligation applies to the alleged secrets; (4) plead what "improper means" were used to acquire the trade secret. We hold that Dick has sufficiently pled the elements for a misappropriation of trade secrets claim under the Federal Rules' liberal notice pleading standards. We discuss below each of the elements of Dick's ITSA claim and Defendants' arguments against them as insufficiently pled.

PCL first argues that Dick fails to identify the trade secrets it claims PCL improperly used. Dick has alleged that the "Joint Venture Data" is the subject of its misappropriation claim against PCL. (Sec.

15

Am. Cmplt. ¶ 63.) Courts are in general agreement that trade secrets need not be disclosed in detail in a complaint alleging misappropriation. *Automed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 920-21 (N.D. Ill. 2001) (citing *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 755 F. Supp. 635, 636 (D. Del. 1991)). The query is whether the allegations provide the defendants with notice as to the substance of the claims. *Id.* at 921. Dick describes the Joint Venture Data as "scheduling information, cost projections, cost information, bidding information and other financial reports for the purpose of constructing the Kendall facility." Other courts in this district, faced with similar descriptions of alleged trade secrets, have found them sufficient at the pleading stage, and we do as well. *See MJ Partners Rest., Ltd. v. Zadikoff*, 10 F. Supp. 2d 922, 933 (N.D. Ill. 1998) (holding that "information regarding suppliers, sales, employee history, gross profits, revenues, expenses, financing agreements, investor lists, marketing plans, and special customer relationships" sufficiently alleged trade secrets); *Labor Ready, Inc. v. Williams Staffing, LLC*, 149 F. Supp. 2d 398, 412 (N.D. Ill. 2001) (holding that trade secrets alleged as "unique, confidential business practices, models and data; . . . pricing data; . . . formats; manuals; . . . and marketing strategies" satisfied notice pleading requirements).

PCL and SLCI both argue that Dick alleges only the unsupported legal conclusion that Dick took reasonable efforts to maintain the secrecy of the Joint Venture Data, which is insufficient. It is true that a rote repetition of statutory language, pleading bare legal conclusions, is not permissible. *Magellan Intern. Corp. v. Salzgitter Handel GmbH*, 76 F. Supp. 2d 919, 927 (N.D. Ill. 1999); *Abbott Labs v. Chiron Corp.*, 43 U.S.P.Q.2d 1695, 1697 (N.D. Ill. 1997). However, Dick has not merely repeated the language of the statute. Dick has alleged that JVA contains a use restriction clause,[9] and Dick relies at least partly upon this clause to support its misappropriation claim. An agreement restricting the use

---

[9]The NEPCO/Dick JVA provided, at Paragraph 25, that ". . . [N]either party shall use the documents for other projects without the prior written consent of the others." (Sec. Am. Cmplt. ¶ 14.)

of information may be considered a reasonable step to maintain secrecy of a trade secret. *See Master Tech Prods. v. Prism Enters., Inc.*, No. 00-C-4599, 2002 WL 475192, at *5 (N.D. Ill. Mar. 27, 2002). Whether the measures taken by a trade secret owner satisfy the Act's reasonableness standard ordinarily is a question of fact for the jury and not one to be decided at the pleading stage. *See Learning Curve Toys, Inc. v. Playwood Toys, Inc.*, 342 F.3d 714, 725 (7th Cir. 2003). Thus, we need not opine as to whether Dick could prove the steps alleged to be taken are in fact proven to be reasonable. At this point, it is sufficient that Dick pleads at least some step was taken.

Finally, SLCI argues that Dick has failed to plead a confidentiality obligation, which is a necessary element of the "misappropriation" prong of an ITSA claim. Dick again relies on the use restriction of the JVA to satisfy its pleading requirement for a confidentiality obligation. At this early stage, we find that Dick has sufficiently pled a confidentiality obligation, based upon the JVA's use restriction, to survive a 12(b)(6) motion to dismiss. Again, we observe that we need not, at this time, address the question of whether this is sufficient to *prove* that a confidentiality obligation existed. Defendants' motions to dismiss the misappropriation of trade secrets claim are denied.

**B.  Tortious Interference and Conversion**

**1.  Preemption**

Defendants move to dismiss Counts II (tortious interference with prospective business relations), III (tortious interference with contractual relations), and IV (conversion) because they are preempted by the ITSA. We grant Defendants' motions to the extent that these counts are premised upon the misuse of confidential information, but we deny the motions to the extent that these counts are premised upon alleged solicitation of employees.

The ITSA expressly preempts all non-contract common law causes of action based on the misappropriation or misuse of information or ideas. *Thomas & Betts Corp. v. Panduit Corp.*, 108 F.

17

Supp. 2d 968, 971 (N.D. Ill. 2000). The law is clear that Illinois has "abolished all common law theories of misuse of information." *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265 (7th Cir. 1992). In particular, the types of claims at issue in the present case – tortious interference and conversion – are preempted by the ITSA, where the claim relies on misappropriation or misuse of ideas. *See, e.g., Hecny Transp., Inc. v. Chu*, No. 98-C-7335, 2004 WL 725466, at *3 (N.D. Ill. Mar. 31, 2004) (tortious interference with contract and conversion claims preempted by ITSA); *Thomas & Betts*, 108 F. Supp. 2d at 978 (tortious interference with business relations and conversion claims preempted by ITSA).

Dick argues that its allegations of the unlawful possession of *tangible documents* distinguishes its claims from misuse of *ideas* allegations, which result in ITSA preemption. However, in cases where the value of a claim stems primarily from the ideas contained within items rather than their tangible forms, the ITSA preempts the claim. *See Automed Techs*, 160 F. Supp. 2d at 922 ("Although these items exist in tangible form, their value is primarily from the information contained within that form."); *Thomas & Betts*, 108 F. Supp. 2d at 973 ("[T]hese physical items have little value apart from the information contained therein . . . ."). Like these cases, the drawings and data at issue here have little value outside of the ideas contained therein. Therefore, to the extent that Dick's claims for tortious interference and conversion stem from Defendants' misuse of the drawings and data, the misuse is of the ideas contained within, rather than their tangible forms, and the ITSA preempts such claims.

However, Dick's tortious interference claims also contain allegations that Defendants wrongfully solicited and utilized employees of the Joint Venture. (Sec Am. Cmplt ¶¶ 40, 45.) Solicitation of employees is independent of the misuse of trade secrets, and a claim premised upon such an allegation is not preempted by the ITSA. *See Automed Techs.*, 160 F. Supp. 2d at 922; *Labor Ready*, 149 F. Supp. 2d at 410.

Therefore, to the extent Dick's tortious interference claims are based upon misuse of ideas in the Joint Venture Drawings and Data, they are dismissed because of preemption. To the extent that Dick's tortious interference claims are based upon the solicitation of its employees, they remain viable claims. Dick's conversion claim relies solely upon the misappropriation of ideas in the drawings and data and is, therefore, dismissed as preempted by the ITSA.

## 2.    Failure to State a Claim

Defendants move to dismiss Dick's tortious interference with prospective business relations (Count II) and tortious interference with contract (Count III) allegations under Rule 12(b)(6) on the basis that they fail to state causes of action.[10] We deny these motions.

Under the Federal Rules, a plaintiff is only required to provide "a short and plain statement showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint will be dismissed under Rule 12(b)(6) only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the complaint. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Under Illinois law, to state a cause of action for tortious interference with prospective business relations, a plaintiff must plead (1) a reasonable expectation of entering into a valid business relationship, (2) that the defendant knew of this expectancy, (3) that the defendant purposefully interfered to prevent the expectancy from being fulfilled, and (4) that damages to the plaintiff resulted. *Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir. 1998). Dick has alleged these elements. Dick states that it had a reasonable expectancy of entering into a valid business relationship with LSP-Nelson (Sec. Am. Cmplt. ¶ 39), that Defendants knew of this expectancy (*Id.*), that Defendants interfered with this expectancy by soliciting and utilizing Joint Venture employees to assist in designing and constructing the Nelson facility (*Id.* ¶ 40), and that Dick suffered

---

[10]Having dismissed Dick's conversion claim in its entirety based upon preemption, it is unnecessary for us to address Defendants' motions to dismiss the conversion claim for failure to state a cause of action.

damages (*Id.* ¶ 42). Contrary to Defendants' contentions, Dick is under no obligation to plead further facts to support its claim. *See Cook*, 141 F.3d at 328. It may be true that Dick will be unable to prove some or all of these allegations to be successful on its claim, but that would require resolution of factual issues beyond the pleadings.[11] *See id.* at 327.

Under Illinois law, to state a cause of action for tortious interference with contract, the plaintiff must plead that (1) the plaintiff had a valid contractual relationship with some other party; (2) the defendant was aware of the contractual obligation; (3) the defendant intentionally or unjustifiably induced the other party to breach; (4) the other party in fact breached as a result of the defendant's actions; and (5) the breach caused the plaintiff damages. *Cook*, 141 F.3d at 328 (citing *Williams v. Shell Oil Co.*, 18 F.3d 396, 402 (7th Cir. 1994)). Dick has alleged that Defendants interfered with Dick's contractual relationship with NEPCO by soliciting and utilizing the services of Joint Venture personnel to benefit Defendants in the performance of work at the Nelson Facility and that these interferences constituted a breach of the JVA. (Sec. Am. Cmplt. ¶ 45.) It has also alleged that Defendants were unjustified in these actions (*Id.* ¶ 46), and that Dick suffered damages as a result (*Id.* ¶ 47). Dick's complaint alleges the necessary elements of the claim and shows that he might be able to prove a set of facts consistent with the complaint that would entitle him to relief. Once again, it may be true that Dick will be unable to prove some or all of these allegations to be successful on its claim, but that would require resolution of factual issues beyond the pleadings.[12]

---

[11]For example, the issues raised by Defendants in their briefs as to whether Dick can show causation between the alleged solicitation and use of employees and a lost business relationship and whether Dick can prove that Defendants' actions, rather than the now-bankrupt NEPCO's actions, frustrated Dick's expectancy go to the merits of the case and are not to be decided at this pleading stage.

[12]For example, the issues raised by Defendants in their briefs as to whether NEPCO actually did breach the JVA under the terms of that agreement as a result of Defendants' solicitation and utilization of the employees, whether solicitation and utilization in this case was in fact unjustifiable, and whether
(continued...)

## III.    Motion for a More Definite Statement

Finally, Defendants move for a more definite statement of Dick's Second Amended Complaint arguing that because the complaint provides general, conclusory allegations and does not identify allegations with respect to each defendant, it is vague and ambiguous.  Rule 12(e) allows for a more definite statement only where the pleading "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading."  Fed. R. Civ. P. 12(e).  12(e) motions are not designed to replace traditional discovery, but to clear up confusion.  *Sheen v. Bil-Jax, Inc.*, No. 93-C-6390, 1993 WL 524211, at *1 (N.D. Ill. Dec. 10, 1993).  Accordingly, motions for a more definite statement should not be used to gain additional information, but, particularly in light of our liberal notice pleading requirement, should be granted "only when the pleading is so unintelligible that the movant cannot draft a responsive pleading."  *United States for Use of Argyle Cut Stone Co. v. Paschen Contractors, Inc.*, 664 F. Supp. 298, 303 (N.D. Ill. 1987).

Contrary to Defendants' argument, a complaint that refers to defendants collectively is not necessarily so ambiguous as to require a more definite standard.  *See, e.g., Guess?, Inc. v. Chang*, 912 F. Supp. 372, 381 (N.D. Ill. 1995).  Furthermore, unless the claim is one that must be pled with particularity, *see* Fed. R. Civ. P. 9(b), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Under these standards, we cannot conclude that Dick's complaint is so ambiguous as to require a more definite statement.  The complaint sufficiently apprises Defendants of the charges against them to permit a response.  We therefore deny Defendants' motion for a more definite statement.

---

[12](...continued)
Defendants' alleged tortious actions actually caused a breach before the JVA terminated go to the merits of the case and are not to be decided at this pleading stage.

## IV.    Conclusion

For the foregoing reasons, Defendants' motions are granted in part and denied in part. We deny PCL's motion to dismiss and SLCI's motion for summary judgment on Count I (copyright infringement). We deny the motions to dismiss Count II (tortious interference with prospective business relations) and Count III (tortious interference with contract). These counts remain viable to the extent provided in this opinion. We grant the motions to dismiss Count IV (conversion). We deny the motions to dismiss Count V (misappropriation of trade secrets). Finally, we deny the motions for a more definite statement.

It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated ____ 11/23/04 ____